**THOM v. BURNET.**

No. 5232.

Court of Appeals of District of Columbia.

Argued Nov. 6, 1931.

Decided Jan. 25, 1932.

George P. Hoover, John R. Shields, and Hubert G. King, all of Washington, D. C., for appellant.

C. M. Charest, Dean P. Kimball, Sewall Key, and S. Dee Hanson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This case comes to this court by a petition to review a decision and determination of the Board of Tax Appeals denying the right of the taxpayer to charge off a certain debt as worthless in the tax year 1921.

The decision of the board is reported in 17 B. T. A. 1185; and the petition is brought under the Revenue Act of 1926, c. 27, §§ 1001–1003, 44 Stat. 9, 109, 110 (26 USCA §§ 1224, 1224 note, 1225, 1226), together with a certain stipulation for review filed April 17, 1930, under section 1002 (d) of the said act (26 USCA § 1225 (d)).

The taxpayer was Alexander Britton, a lawyer of high standing in Washington, who died on June 24, 1926, and the appellant is the legal representative of his estate.

In 1916 Mr. Britton's daughter Catherine married Prince Alfred Hohenlohe Schilling-furst, of Austria, at that time a secretary of the Austro-Hungarian Embassy, in Washington.

In 1917, upon the declaration of war between Austria and the United States, the Austrian Embassy was removed from Washington and Prince Hohenlohe was transferred to the Austrian legation at Berne, where he resided with his wife and family until November, 1919, and during which period he borrowed from various sources in Switzerland certain moneys for living expenses to the amount of $10,000 in American currency, securing these loans by the collateral deposit of Austrian kronen, then and thereafter going through a process of progressive depreciation.

In December, 1919, Prince Hohenlohe returned to the United States, where he obtained from Mr. Britton some $37,000, explaining his Swiss debts in detail; the depreciation of his Austrian securities; of the Austrian public currency; and of all property values throughout Austria.

With the moneys thus obtained from Mr. Britton, Prince Hohenlohe paid off his debts in Switzerland, and in the spring of 1920 bought Friedstein, a landed estate of 300 acres near Vienna, for $15,000, where he has since resided with his children.

This estate had long been owned by the family of the prince, and the will of his grandmother provided that if his uncle declined to live there it should be offered to the prince for the equivalent of $15,000 in American currency, which was regarded as a price much below its value.

Prince Hohenlohe took title to this prop-

erty in his own name; made certain expenditures for improvements on the house and the land; and in 1924 or 1925 borrowed $20,000 by mortgaging it.

Since 1919 Prince Hohenlohe has owned sundry Austrian securities of very uncertain value, if any, and divers sums in Austrian kronen, also of very uncertain value.

From 1920 until the time of his death, in 1926, Mr. Britton gave to Princess Hohenlohe a regular allowance of $200 or $250 per month for living expenses, while the earnings of Prince Hohenlohe were from $2,500 to $3,000 per year.

No notes or other securities were given for the moneys obtained by the prince from Mr. Britton; no interest was ever paid thereon; and they were not physically entered or charged off in any books of account of the taxpayer.

But it is contended on his behalf that these money transactions with his son-in-law constituted a debt which he ascertained, in 1921, to be worthless and proper to be charged off his income tax return for that year.

This contention being rejected both by the commissioner and by the Board of Tax Appeals, this appeal presents the same question for decision here.

On this state of facts, and the testimony establishing it, the Board of Tax Appeals held that the moneys passing from the taxpayer to his son-in-law constituted a loan, but that the evidence did not establish that loan as worthless in 1921, or that the taxpayer was entitled to deduct it from his gross income for that year.

And our consideration of the record leads us to the same conclusion, for the taxpayer is neither required to be an incorrigible optimist and ignore the worthlessness of a debt that stares him in the face, nor to throw good money after bad to get the judgment of a court and the failure of a sheriff to demonstrate a fact he already knows. United States v. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Selden v. Heiner (D. C.) 12 F. (2d) 474.

But where the taxpayer, because of family ties or personal relations between himself and his debtor, is not willing to enforce payment of his debt, in whole or in part, he is not thereby entitled to deduct it from his income tax as worthless.

And that is this case; for in 1921 the debtor, aside from his personal assets, for whatever they may have been worth, owned the landed estate of Friedstein in his own name, wholly paid for and free from mortgage, and which in 1924 or 1925 or 1926 he mortgaged for $20,000.

There is no persuasive showing that the debt could not have been in considerable measure satisfied by subjecting this property to its payment or security.

But this property was the residence of the taxpayer's daughter and her two young children, to whom he was making a regular allowance for support.

And in view of the relationships among the parties which the record discloses, the natural course for such a man as Mr. Britton was to let these financial matters rest for future consideration. And that is exactly what Prince Hohenlohe, speaking as a witness for the taxpayer, said was done, for he testified that while Mr. Britton occasionally mentioned the debt to him, he never pressed for its payment, and the prince never expected that Mr. Britton would press the matter while their financial and economic condition remained the same.

We are of opinion that while the debt was of doubtful value and difficult of collection in fact, as among the parties thereto, it was not worthless in law within the meaning of the taxing act.

As to the contention of the appellant that the debt was surely worthless in part if not in whole, and, consequently, that the case, if not reversed, should be remanded to the Board of Tax Appeals for a further hearing to determine the extent of the worthlessness, we consider that aside from the hopeless difficulty of fact in deciding such a question in the absence of any effort by the creditor to enforce payment, there is no foundation in law for the contention as presented in this case.

For our jurisdiction to remand a case to the Board of Tax Appeals arises under the statute only if a case has been decided there "not in accordance with law." Section 1003 of the act (26 USCA § 1226). But as we are of opinion that the decision of this case by the Board of Tax Appeals was in accordance with law, it follows that we are without power to remand it for further proceedings. Houston v. Commissioner of Internal Revenue (C. C. A. 3d, 53 F. (2d) 445); Prentice-Hall Tax Service 1931, vol. 2, p. 2300—128, par. 2028.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.