**Theodore C. BONNEY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 208, Docket 24273.**

United States Court of Appeals
Second Circuit.

Argued May 16, 1957.

Decided Aug. 2, 1957.

Victor G. Mount, Seneca Falls, N. Y., for petitioner, John J. Nicit, Waterloo, N. Y., of counsel.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and L. W. Post, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

SWAN, Circuit Judge.

In the Tax Court, Bonney's petition was consolidated for hearing with the petitions of four other taxpayers and all five cases were disposed of in one opinion reported in 24 T.C. 199. The appeals of the taxpayers other than Bonney have been decided in an opinion. Towers v. Commissioner of Internal Revenue, 2 Cir., 247 F.2d 233, handed down herewith.

Bonney's appeal asserts six errors. Three of them present the same questions decided as Issues 4, 5 and 8 in the opinion below and discussed in Towers v. Commissioner of Internal Revenue. As to them, nothing further need be said. The three other alleged errors are peculiar to Bonney's case and will be discussed in this opinion.

■ In 1947 Bonney spent $681.96 for repairing storm damage to the roof of a house he occupied under lease. He was under no obligation to make the repair. He claimed this amount as a loss deductible under section 23(e) (3) of the 1939 Internal Revenue Code, 26 U.S. C.A. § 23(e) (3). The Tax Court denied the deduction—Issue 12 of its opinion. It reasoned that section 23(i) provides that the basis for determining the amount of deduction for losses under section (e) "shall be the adjusted basis provided in section 113(b) for determining the loss from the sale or other disposition of property," and there is nothing in the record from which it could determine either "what that basis was, or whether the loss exceeded such basis."[1] The taxpayer contends that the amount of the repair bill should have been taken as proof of the amount of the loss. Concededly there is nothing in the Code expressly authorizing it. The casualty loss affected the value of both the lessee's interest and the landlord's reversion. The loss must be apportioned between them. The Tax Court was correct in rejecting the contention that the repair bill measured the tenant's loss.

■ It is next asserted that the Tax Court erred in holding that payments made by Bonney to his putative wife were not deductible under section 23(e) as losses arising from theft. The facts are stated in detail under Issue 13 of the opinion below. A brief summary will suffice here. In 1937 Bonney went

1. Cf. Helvering v. Owens, 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292; United States v. Koshland, 9 Cir., 208 F.2d 636, 639, note 3.

through a marriage ceremony in the state of New York with Edna Wheaton, who had previously been divorced by a New York decree which prohibited her remarriage within the state. She concealed this fact from Bonney. In 1945 he discovered it. Thereupon he separated from Edna, started a proceeding to procure annulment of the putative marriage, and in his 1945 income tax return claimed deduction of the amounts of money he had given her for clothing and spending money during the years he believed himself lawfully married to her.[2] The issue is whether the taxpayer has proved that he was the victim of larceny as defined in section 1290 of the New York Penal Law, McK.Consol.Laws, c. 40.[3] To constitute the crime of larceny by false pretense there must be proof of a criminal intent to deprive and defraud the owner of his property. People v. Lehrer, 182 Misc. 645, 45 N.Y.S.2d 170, 172. The Tax Court was of opinion that "there is no evidence that she [Edna] went through the form of marriage with the intent and purpose of obtaining from Bonney the monies in question * * * Upon consideration of all the circumstances, we do not think that her acceptance of such monies constituted theft within the meaning of the New York statute."

 The taxpayer contends that this conclusion does not square with the New York decisions. But the cases relied upon do not establish the contention. It is true that a failure on the part of

a prospective spouse to disclose a prior marriage, which disables him from contracting the projected marriage, renders the later void *ab initio*. Roth v. Roth, 97 Misc. 136, 161 N.Y.S. 99. It also gives rise to an action for damages, which may include amounts laid out for support of the putative wife during the supposed marriage. Kujek v. Goldmann, 150 N.Y. 176, 44 N.E. 773, 34 L.R.A. 156; Amsterdam v. Amsterdam, Sup., 56 N.Y. S.2d 19. But no case has been cited holding that the criminal intent necessary for conviction of the crime of larceny must be inferred from a ceremonial marriage contracted by a disqualified spouse. Cf. People v. Lehrer, supra. The taxpayer has the burden of showing by "clear and convincing proof" that the local law supports his contentions.[4] We cannot say that the Tax Court's finding that he had not carried this burden was clearly erroneous.

 The final contention, Issue 14 of the opinion below, relates to the denial of a deduction claimed by Bonney in 1947 on account of money and property transferred to Edna to cause her to cease making derogatory accusations against him which were adversely affecting his professional reputation as a lawyer. The deduction was claimed as losses by theft or alternatively, as ordinary and necessary business expenses. Under neither theory is it sustainable. The taxpayer has not met his burden of showing that under New York law Edna could be convicted of larceny on these

2. *Arguendo* it may be assumed that the losses, if allowable at all, could be deducted in the year of discovery. See Alison v. United States, 344 U.S. 167, 73 S.Ct. 191, 97 L.Ed. 186.

3. This provides that

"A person who, with the intent to deprive or defraud another of the use and benefit of property or to appropriate the same to the use of the taker, * * * wrongfully takes, obtains or withholds, * * * any money, * * * or article of value of any kind, steals such property and is guilty of larceny."

The section further provides that it is no defense to a prosecution for larceny that:

"1. The accused obtained possession of, or title to, such property with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token or writing; or

* * * * *

"3. The person from whom the accused obtained such property intended to part with title to, as well as possession of, such property, or with possession as well as title; * * *"

4. See Helvering v. Fitch, 309 U.S. 149, 156, 60 S.Ct. 427, 84 L.Ed. 665; Helvering v. Leonard, 310 U.S. 80, 86, 60 S.Ct. 780, 84 L.Ed. 1087.

facts. The common meaning of "theft" does not include extortion. Nor was the payment an *ordinary* business expense, even assuming it to have been necessary for the protection of Bonney's law practice. See Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 78 L.Ed. 212.

Decision affirmed.